Good morning, everyone. Welcome. Our first case for argument this morning is Michelle Sleik v. Village of Howard. Mr. Weininger. Thank you, Your Honor. May it please the Court, Andrew Weininger of Eminent Domain Services, LLC, in Madison, Wisconsin, for the plaintiff's appellants. The President and Counsel at the table is my colleague, Sarah Olsen, and also present is Leland Hill, Michael Trockey, Amy Trockey, Michelle Sleik, and Frank Sleik. Deb probably wanted to be here as well, but she's the caregiver for her adult child. In this case, the District Court erred in three ways. First, the Court analyzed the special assessments as an obligation to pay money and not as a Fifth Amendment taking. Second, the Court dismissed appellants' procedural and substantive due process claims on the uncertain assumption that state law remedies are definitely available to appellants. And third, the Court ignored the specific examples of benefited property owners that appellants identified to support their equal protection claim. I'll start by addressing our takings claim. Since at least Norwood, there's three prongs that have to be satisfied for a special assessment to be legal. It has to be local, a local project, not a general project. It has to confer a special benefit on the property that the municipality seeks to special assess, a special benefit. And that's an uncommon advantage to the property. And third, it has to be reasonable. And what that means, it has to be proportional. The amount of the special assessment has to be proportional to the special benefit accrued to the property. That argument all assumes that Norwood laid down some general principles for takings law. And I'm not sure that's the takeaway from that case after the Supreme Court's many decisions in the immediate aftermath of Norwood demonstrate that the decision was really very narrowly related to its facts. And, in fact, there are decisions from the Court saying that it should be understood that way. And then not having been cited in any takings jurisprudence since the New Deal, it's a pretty crusty old case that you've rested your entire takings claim on. There have been examples of courts relying on Norwood. CED Properties case from Wisconsin found that a taking in substantial excess of the special benefit based on Norwood is a taking. There's a South Dakota case that discusses Norwood. Extensively, the cases that Your Honor is referring to, I believe, are Webster, Cass Farm, Parker, Tonawanda, and French. Those are the turn-of-the-century paving cases. And in those cases, the challenge to the special assessment was how it was calculated using the front foot methodology. The claim in those cases was not that the special assessment was in substantial excess to the amount of the special benefit because what happens is if the idea— I'm not talking about the specifics of what was at issue in that entire line of cases. What I'm talking about is the court's language saying don't overread Norwood. And Justice Harlan was really up in arms about that very clearly. He was the author of Norwood, and he objected in several dissents in the early 20th century, objecting that his colleagues were misreading Norwood and were undermining it by subsequent cases. But we have to take the majority at its word that Norwood was really kind of a one-off. That word wasn't used back then, but that's basically what the court was saying. Don't overread this. It was a unique situation where the property owner had property taken. There was a condemnation. The jury set his just compensation for the taking at $2,000, and then the municipality came back and adopted an ordinance assessing him for that $2,000 plus a whole bunch of other costs. And the court said that's kind of like a due process violation, equal protection violation in the sense of class of one. That's how we refer to it today. That term, again, wasn't used back then, but that's essentially what the court's decision rested on. It wasn't really announcing any new principles of taking jurisprudence, and to the extent that there are some state courts who interpret it that way, that's probably wrong. And we don't have to follow that. My reading of Norwood is that it's a factual determination, and the facts of Norwood supported the finding that assessment and substantial excess to the benefit is a taking. So it's not a blanket. What Norwood does make clear is not that all special assessments are illegal, or it's just that the government's power to special assess is not unlimited, and that Norwood observes that private property rights would be seriously impaired if landowners were barred from challenging special assessments, and the line between a taxation and between a taking is the substantial excess, and that's what the factual finding for the court to make, and that's the case that we proved here was that there was no benefit to the property, and these properties were assessed tens of thousands of dollars. There was no benefit to the property. The project itself wasn't local. The project was for the general community and to spur development in the community, and it just so happened that the plaintiff's appellants were living adjacent to the road and received just the same benefit that the general public did. They received no specific benefit to their properties, and, in fact, their properties were made worse. So the village itself could have made the case that the properties were specially benefited, that they increased in value, and they didn't make that. They put forth no facts in this case that there was an increase in value to the properties as a result of the special assessment, and the principle underlying it is that for a special assessment to be valid, the idea is if it goes up by $2,000 because of the special benefit to this property as a result of the local project, then the special assessment roughly matches. It doesn't have to be equal, but it roughly matches. So a $2,000 improvement and a $2,000 assessment, it's roughly equal. What we had happen here was no benefit or the properties were made worse. So for Hill, for example, that property was made worse. It was assessed tens of thousands of dollars. The village itself admits that it's too expensive and arduous for Hill's property to connect to the water and sewer, and so he's been charged tens of thousands of dollars for this assessment for no benefit. So the taking is. . . hooked up to the sanitary sewer and the storm sewer system to say no benefit. It seems like a stretch. That's our position. We've set forth, I believe, a lot of facts that this was to benefit the general community that it had to be. . . But your client's property is now hooked up to the sanitary sewer system and the storm system. So there may be benefits to others and to the community as well, but to say that your clients didn't receive any benefit seems a stretch. They had the. . . There's a lateral that they can then pay additional sums of money to connect to, so their properties aren't connected. Their sewer and water were totally fine so that there was no benefit, and we set forth expert opinions and facts that that didn't benefit the property. The village, on the other hand, didn't set forth any facts. They just said the benefit is the lateral. The benefit is the road. That's not a benefit. There has to be some type of an analysis or proof that this is a specific, special benefit to the individual properties, and it has to be different in kind, not just in degree. So the village has taken this position. Well, yes, we put it in a larger water main, but in essence we charge the clients less. The special benefit has to be unique to the property and a unique benefit, and quite clearly this project would have been designed, irregardless of my clients living there, this project was to accommodate a change to the interstate system and how traffic flowed. It was designed. . . The first step in the special assessment process is to look at the project and determine whether or not it's a local project or a general project. If it's a general project, the analysis ends, and it cannot be a special assessment. And what's the legal source for that rule? It's Norwood. It's Wisconsin law under CED. It's a three-pronged process, and that's set forth. . . Fifth Amendment takings claim. Well, this was brought in state court. It was then. . . I understand, but it's a federal cause of action. It's based on federal takings. There's grounds for it. And the Supreme Court said about Norwood that it wasn't meant to essentially make every state case a 14th Amendment case or a takings case. Not in Norwood, but cases subsequent to Norwood where they've interpreted Norwood. Norwood sets forth clearly that it has to be local. It has to be. . . So you're. . . Just to make clear, your three prongs that you're giving us are really based on Norwood only. I think. . . And state law. Both, yeah. Okay. Let me ask you this. If we set to one side your Norwood argument, which you've made quite clear, and you are talking to us about the facts you put into the record, your position is the village did not put in other persuasive or contrary facts, are we then left with you asking us to be finders of fact and make a contrary decision that the village itself did not weigh and that the state court itself could sort out if this case were back in state court? I think what we're asked. . . I think there is sufficient fact that we've set forth in summary judgment to support a finding of judgment in favor of the plaintiff's appellants, and certainly we would ask the court to do that. Otherwise, I think that the court should overturn the district court's decision regarding the constitutional claims because with regards to the takings claim, certainly we've set forth a taking here in the court. . . But if we set that to one side. . . And then we have the procedural due process and substantive due process and the equal protection. The substantive due process and the procedural due process were dismissed by the district court on the basis that there was undoubtedly state court remedies available, and that is somewhat in dispute because in moving for summary judgment, the village raised for the first time that our state claims were untimely filed, and I would submit to the court we did timely file them, and to the extent we didn't timely file them, we would have a right procedural due process claim because for the first time moving for summary judgment, the village claimed we're actually going under a village ordinance. That village ordinance was never once mentioned in any of the filings or any of the proceedings that led to the special assessment, and in fact they had followed Chapter 66.0703, that procedure in sending a preliminary resolution, and the final resolution in this case didn't mention any ordinance. In fact, it didn't mention any state statute. Is there anything pending in state court now? I know there were two suits filed, and they were removed to federal court, but do you also have a claim in state court challenging the assessment? The state claims were brought – this entire case was brought in state court. It was all then removed. Correct, but is there anything still pending in state court? The state claims, I believe, are part of it. You didn't file a separate – No, no. Have you filed anything separate in state court challenging the assessments themselves? No, the challenge to the assessments was this lawsuit. The only cases now pending pertaining to this are the two that have been consolidated in federal court. Yes, and that was done because 66.0703, the state claim, says that all claims have to be brought down, and we didn't want to be precluded. So with that, I will reserve my remaining time for removal. That's fine. Thank you. Ms. Tierney. Good morning. Danielle Tierney for Defendants Appellants. I want to pick up and correct a couple of factual misstatements that were just made. To answer your question, Judge Saney, there are – after the summary judgment decision, the state court cases or state court claims were dismissed. They were remanded back to the two original circuit court cases. We did have two status conferences where plaintiff's counsel had asked that the cases just kind of linger while this gets resolved. So the two cases are pending currently. But nothing – they're stayed, essentially, until we – They are not officially stayed. They are unofficially stayed, but the claims are pending. Okay. In the same circuit court? In the same circuit court, but they were two different cases. So two groups of – there were two state court cases filed. They were then removed to federal court and then consolidated. So when the district court dismissed the claims, they went back to the two separate state court cases. Secondly, I want to address the statute – I'm sorry. Just one more question. Do you plan to argue, if it stays in state court, that the claims are untimely? Yes, that was a defense that was raised. Why wouldn't that deprive them of a state court route? We did cite law in our brief that an untimely appeal, an untimely exercise of a procedure that's available, does not render that appellant or that plaintiff's procedures unavailable as a matter of law that would give rise to a due process claim. Otherwise, anybody could just waive an appeal deadline and then run off to federal court and say, well, my procedural due process rights were violated. That's just not the law. The remedies exist on the books if they were – I'm sorry? The remedies exist on the statute books. Correct, and they are available for somebody to avail themselves of. And to be clear, you haven't won on that. That's something you just plan to raise and the state court will have to make an independent – Correct, correct. And that brings me to this issue of local versus special versus general benefits. I think that's a little bit of a misstatement about what's before this court. That's an issue related to the state court cases. So one of the issues that the appellants and that the village have been disputing is under what authority the special assessments were made. We outlined in our statement of the case, specifically I can draw your attention to one of the footnotes, footnote 3, 4, and 5 of our brief, which is document 13. It highlights some of the language that was used in the notices and the agenda items. There's been a representation that the village never told any of the homeowners and property owners under what authority they were acting. All of the ordinance or all of the resolutions, agenda items, all point to that the village was acting under 66.0701. And that's where this discrepancy comes in between the local benefits versus a special benefit versus a general benefit. But as it pertains to the federal claims pending before this court, that really doesn't matter. The question is whether or not there was a Fifth Amendment takings, whether or not there was a due process violation, and whether or not there was an equal protection violation. I think Council's argument is that it matters under Norwood when looking at the substantial excess. That's what I understood it to be. And I question that because I've read Norwood many times in preparation for today's argument, and I haven't seen anything with respect to this local versus special versus general. And, in fact, this three-prong test that they keep referring to is from a Wisconsin state case, which I would also note the Wisconsin state case didn't discuss any of the cases subsequent to Norwood. And I would also note with respect to the representation of the numerous cases in maybe not this century, but at least the last century, all of the state court cases that were cited on appellant's brief, page 17, the South Dakota case, the Nevada case, the Texas case, so on and so forth. I did look up all of those cases. Not one of those cases discussed a single Supreme Court case after Norwood. So there was no mention of the French case. There was no subsequent clarification. Since you have read Norwood and its progeny so many times, what is your understanding about when a special assessment, at what point it can constitute a taking under Norwood and its progeny? Certainly. And I've been thinking about this, trying to distill that, and the closest thing I can come to is kind of the pornography definition. The court will know it when it sees it. Norwood and its progenies have established that it needs to be this egregious and obvious. I think the language that certain cases have used is patent, you know, patent abuse or patently obvious. But this idea that federal courts need to step in on local government assessments and weigh this equal benefit, 2,000 to 2,000, 2,500 to 2,500, that's exactly what the Norwood subsequent cases said federal courts should not be doing. Otherwise, federal courts are going to get pulled in on every assessment challenge. And I don't know, I could have, but admittedly didn't look up when tax assessment challenge statutes kind of came into existence and whether or not that had any reasons for why we haven't seen any cases under Norwood or special assessment challenges since, really, the early 1900s. It probably has something to do with the fact that the Supreme Court has said fairly unequivocally that taxes are not taken. That also bears into it. And that the idea of due process was very different in the late 1800s, early 1900s, and has undergone a doctrinal shift of some significance since the New Deal. Correct. And the court's saying we're not going to get involved. You have procedures available. You have the opportunity to challenge this. You have the opportunity to go in and say my assessment's too much. And that kind of segues into their due process claim. Let's assume for the sake of this discussion that they did timely file it. Obviously, that would be something for the state court to resolve whether or not their appeal was timely. But the state court affords them, or will afford them, could afford them, the remedy that they're seeking. They're arguing either that they shouldn't be assessed at all because they say they have no benefits, and they can make that argument to the state court. And if the state court buys that argument, the state court can modify. The state court can affirm. The state court can completely remove their assessment. So they get what they're looking for through the state court process. And that's actually all that the Norwood majority said, which was that the property owner in that case was deprived of an opportunity to challenge this assessment. Correct. And that was a violation of his property rights. And the later opinions from the Supreme Court suggest that that was essentially a due process holding and perhaps an equal protection holding rather than an announcement of a takings law principle. Correct. And I'd also like to note, so I know these are obviously not binding on the court, but the appellants did cite a couple of cases from the Fourth and Fifth Circuit from about, I think, 1920s and 1930s and said, well, these more contemporary cases, although, I don't know, 90 years is really contemporary, but these more contemporary cases support our position that Norwood is good law. And in those cases, they were not necessarily inconsistent with what the subsequent cases after Norwood said, which is if we're looking at some seriously egregious facts and that landowner is denied the opportunity to kind of present their case as to why this is an unfair assessment, then that might give rise to a due process violation. You aren't disputing that Norwood is still good law. You're just disputing what it stands for. The Supreme Court hasn't overruled it. They cited it last year in the de Villiers case. I don't think we could say it's overruled, but what it stands for may not be as broad as what's been articulated here. Correct. There's been no court that's explicitly overruled Norwood, but the subsequent cases have pretty explicitly identified that it's a very narrow case. Yes, and it's limited to kind of those egregious facts, which is we took your property and then we assessed you for it, and then on top of that, we also assessed your court process. Let me ask you this. I hear much of your argument is this is hyperlocal and, you know, this is state court matter. Why then remove it, and then also, why lean into plaintiff's constitutional arguments and win below and then come here and ask us to construe the doctrine of constitutional avoidance in the way you have, and you leaned into that. Certainly. Well, with regards to the removal, I can say from our firm's practice, we like to remove any cases that have any kind of federal claims to them just because we think the federal courts tend to be the best arbiters of federal law. And with respect to the doctrine of constitutional avoidance, admittedly that was perhaps developed a little bit later in the case. I can attest that I came into this case a little bit later. The issue was raised during summary judgment, and having been a participant in the St. Augustine case where this panel, during the course of its litigation, noted the issues or the potential implication of constitutional avoidance. Admittedly, I think this is just a case where it should be applied. And how would that work in this case? So in this case, so the doctrine of constitutional avoidance, as I understand, is that any time a court or a federal court is tasked with deciding federal issues, but if there are related state or relief under state law that could afford the same remedies and give the applicant or the plaintiff their relief that they seek, that the court should first look to see whether or not state law would provide that relief before they address any of the constitutional claims. Well, that's just an order of battle question. You're not suggesting that the plaintiff should win on the state law claims.  And that's the only way we would apply constitutional avoidance. In other words, if the plaintiffs can get all the relief that they're asking for under a state law claim, there's no reason to reach a federal constitutional question because that's essentially an advisory opinion. That's all that the St. Augustine case stands for because the plaintiffs in that case won their state law claim after the interpretive question involving Wisconsin law was certified to the state Supreme Court. Well, I think if they... I guess the issue of constitutional avoidance is a little collateral because the procedural due process claim, regardless of if they win or not at state court, the existence of relief in the state court and through the state proceedings nullifies their procedural due process claim. And then with respect to their takings claim, I suppose this is more appropriately argued to the procedural due process aspect because our argument on the takings claim is they don't have a takings claim. There's no taking of property. There is an assessment of money, which the Supreme Court has repeatedly, unequivocally, and indisputably held on numerous occasions is not a taking. I'd note in appellant's reply brief when addressing our argument regarding taxes as takings, the appellants do not dispute that taxes aren't takings. They also don't dispute that special assessments are taxes. And so I think that's pretty dispositive of the entire argument. Instead, they... The district court relied on a line of cases involving order-to-pay cases, which seems a little bit off because those cases are more general obligations that aren't tied to specific property, whereas the tax cases are tied to specific property. It seems like that would be the better analogy here than just these general order-to-pay. And admittedly, there aren't a lot of cases where there are tax assessments. You know, we've got this... I think that's in part probably because of the exhaustion requirement that was in place for a century until the Supreme Court, in the Nick case, undid the exhaustion requirement. So that could be why we don't have any case law here.  But it doesn't seem like the order-to-pay, that that's the best analogy to what we're talking about here, which is some form of a special assessment, some form in some way connected to the property where the order-to-pay cases are not. Certainly. And I think in that, because there are no Supreme Court cases on that issue, this court could look to some of the other circuits' decisions that we did cite in our brief on. I'm looking on page 21. The 8th Circuit case, the Federal Circuit case. That discuss special assessments in that scenario. Additionally, this court did affirm an Eastern District of Wisconsin case that mentioned how if an appellant's argument were taken to its logical end, any taxpayer or filing of fees would have such a claim, and the Constitution does not prohibit the government from taking money in the payment of legitimate fees or levies. So based on the analysis, I think the court can apply that and come to the conclusion that this is a tax, not a taking, and should affirm the district court ruling. Thank you. Thank you. Mr. Leningrad. Listening to the village, it sounds that they agree that under egregious facts, there is a nor would taking, and I would submit to this court that there are a lot of egregious facts in this case. Mr. Hill was assessed $37,000 for water and sewer that he can't hook up to. The village designed the project to make 80 acres that they own eminently more valuable so they could build a sports complex, and the village itself has admitted that for all the properties, it didn't raise the monetary value or the non-monetary value of their property. So I'd submit that these are egregious facts, and in this case, the district court didn't analyze those facts, and it's a factual analysis for the court to undertake. The two cases that, respectfully, I don't think it says clear-cut the limitations that were set on nor would. I really believe that the turn-of-the-century cases regarding paving had to do with the front foot assessment challenge, not that these were some egregious facts, very likely because they were a nominal amount of money for a nominal benefit, and it matched, and so the challenge was to the front foot assessment. The Town of Clover case, which was just mentioned, referenced nor would and held that an assessment violated the 14th Amendment because an assessment that was confiscatory and out of proportion to the benefit received violates due process. And then the City of Commerce case where it also relied on nor would. So I'd also just very quickly draw the court's attention to the Tyler case, and if I may, just a few seconds. That's the Minnesota tax case from a couple years ago where the woman was forced in a tax foreclosure to sell her condo for a $15,000 tax bill and whether or not the $40,000 value could be retained by the municipality. And what the Supreme Court said was the takings clause was designed to bar government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole. And that principle is the same today as it was when nor would was decided in 1898. Thank you. Thank you. Our thanks to both counsel. We'll take the case under advisement.